THE CAMDEN AND TRENTON RAILWAY COMPANY

*v.*

THE UNITED STATES CAST IRON PIPE AND FOUNDRY COMPANY.

[Filed November 19th, 1904.]

1. The use of the public highways by street railway cars running on tracks there laid is a modification of the public use to which those highways were originally devoted.

2. The street railway companies enjoy the right to run their cars upon the public highways in common with other persons whose vehicles may be crossing over or passing on those highways.

3. Everyone using such an easement, in common with others, is bound so to regulate his own use of the common right that he does not unreasonably interfere with other persons in their enjoyment of it.

4. Express statutory limitation of the speed at which street railway cars may be driven along public highways, is not necessary to cast upon railway companies in using the public highways the obligation so to restrain the speed of their cars that other vehicles may reasonably enjoy the common use of the way.

5. Where a street railway company using a public street can, by reasonably slowing the speed of its own cars, remove the probability of collision with other vehicles crossing or traveling the street, it has no equity to require other users of the way to provide expensive special devices to insure to the street railway company the opportunity to drive its cars in the public street safely at unlimited speed.

6. When the circumstances which attend upon the enjoyment of a common easement of way at grade, by two or more users at the same place, show that the interference of one user with another will only be occasional and insignificant, this court will not compel the introduction by the later user of special devices to prevent collisions.

On bill, answer and proofs.

The complainant in this bill was originally incorporated by the name of the Monmouth Traction Company under the statute known as the Trolley act, approved March 14th, 1893.

In October, 1899, the name of the complainant was, by certificate filed in the secretary of state's office, changed from the Monmouth Traction Company to the Camden and Trenton Railway Company.

The complainant company has constructed its electric railway from Camden to Trenton. A portion, by virtue of an ordinance of the city of Burlington, has been located and laid longitudinally along Pearl street in that city. The complainant company is now engaged in operating a street railway by the motive power of electricity for the carriage of passengers to and fro along the whole of its route, of which its tracks lying in Pearl street, as above stated, form a part.

The defendant, the United States Cast Iron Pipe and Foundry Company, is a manufacturing corporation and owns the property lying on each side of Pearl street. It is presently conducting there the business of making cast-iron pipes. The nature of the business requires the defendant company to have the use of steam railroad tracks across Pearl street and, therefore, across the tracks of the complainant company at that point, for the carriage of raw material and manufactured stock to and from the various departments of its business, and also to and from the Pennsylvania railroad, with which the railroad tracks lying in the defendant company's premises connect and gauge. The cars used in the conduct of the defendant company's business carry freight only. Their movement is accomplished by means of a steam locomotive furnished by the Pennsylvania Railroad Company, which has an engineer and fireman, conductor and brakeman on the train.

The defendant, the city of Burlington, has the regulation and control of the public highways of that city, one of which, Pearl street, is by all parties admitted to be.

The complainant company with its electric railway tracks, the defendant foundry company with its steam railroad crossings, and the city of Burlington with its public highway, Pearl street, each has a right to the use of the same place, *i. e.*, the location where the tracks of the electric railway and those of the steam railroad will cross each other in Pearl street—the public highway.

The bill of complaint is filed by the electric railway company to obtain a decree which shall adjust the manner in which the parties shall respectively use and enjoy their several privileges at the points where each has a right of passage.

The following diagram will indicate the lay of the land at the places in Pearl street, in the city of Burlington, touching which this controversy has arisen.

Before the complainant company had filed its route, the defendant company had built, and had in use, a railroad crossing from one portion of its works to another. The location of this crossing is indicated on the diagram by the letter *A*. The complainant company has constructed its railway across the defendant company's tracks at the point *A* without any dispute, and this crossing is not involved in the present controversy.

In April, 1904, the defendant company obtained leave, by ordinance from the city of Burlington, to construct and operate three additional, separate single-track railways crossing Pearl street, one at a point twelve hundred feet east of Thompson street, marked *C* on the diagram; one at a point fifteen feet eastwardly from Thompson, marked *B* on the diagram; one at a point three hundred feet eastwardly from Hulme street, marked *Z* on the diagram.

None of these three proposed crossings has yet been constructed. That one, at the point marked *Z*, the defendant company has, on this hearing, declared it has no intention to build presently, though it may construct it in the remote future. The other two at points *B* and *C*, the defendant company is presently about to build across Pearl street and the tracks of the complainant company.

The ordinance of the city of Burlington, which grants leave to the defendant company to lay its three tracks across Pearl street, contains the following provision for the prevention of collision or other accident at the crossings in Pearl street:

"Section 4. Be it further ordained and enacted that in the use and operation of the said railroads, where the same shall cross said streets, it shall be the duty of the said foundry company to cause proper notice of the approach of the cars on said railroads to be given by flagmen or others of the train crews, so that persons passing through and along the said streets shall be warned of the approach of such cars, and the said foundry company, as a condition upon this grant, as assented to by the acceptance of this ordinance, hereby covenants and agrees to indemnify and save harmless the said city of and from all damage to persons and property which may arise because of the grant herein given."

The complainant's bill shows that all of the defendant company's proposed railway crossings in Pearl street are at grade, that either steam or electricity is authorized to be used in the

operation of the defendant's crossings, and that the only provision made by the ordinance for securing the safety of the public in operating the crossings is that the defendant company shall cause notice of approaching cars on its railroad, to be given by a flagman, so that persons passing in the street shall be warned of the approach of the defendant company's cars.

The complainant alleges that it has an easement, entitling it to the use of its railway tracks on Pearl street, which is prior and superior to that granted to the defendant company by the ordinance of April 13th, 1904, and that, if a protective device be found necessary because of the defendant's crossings, it should be erected and maintained at the expense of the defendant company.

The complainant further alleges that in the conduct of the business of carrying passengers upon its railway it runs fifty-two cars daily over the places where the defendant proposes to build its steam railway tracks across complainant's line; that the running of the cars of the defendant company across the passenger railway tracks of the complainant will greatly endanger the safety of persons traveling in the complainant company's cars or traveling in other vehicles along Pearl street, unless some such device as a derailing switch be constructed at the points of crossing, so as to prevent any collision between passenger cars running along the complainant's electric railway and the freight cars of the defendant company crossing the complainant company's tracks.

The complainant alleges that it has requested the defendant to adopt some safe method of crossing at the crossings in question, and that the defendant has refused.

The complainant prays that the defendant company may be restrained from constructing the crossings above named unless it provides the same with some suitable device for the protection of the public traveling along Pearl street at the points of intersection of the defendant company's steam railway tracks with the complainant company's electric railway tracks.

The defendant company admits by its answer that it is about to construct at grade the crossing of the complainant company's tracks at the point twelve hundred feet east of Thomp-

son street (marked *C* on the diagram), and also the other crossing at the point fifteen feet eastwardly of the east side of Thompson street (marked *D* on the diagram). It denies that the complainant company has acquired any right in Pearl street superior to the right of the defendant in the street, and that if any safety device is necessary for the protection of the traveling public it should be installed or maintained at the crossing of the defendant, and insists that the defendant company's right in the street is superior to any right of the complainant therein, and that, if any safety device shall be installed, the expense of erecting and maintaining the same should be borne by the complainant.

The defendant denies that the complainant company passes, or has ever passed, over the *locus in quo* cars to the number of fifty-two daily; and that the operation of the railroad cars on the defendant's siding across the defendant's street railway tracks will endanger the safety of the traveling public, unless some derailing device be installed at the crossings in question. It also denies that any such device is necessary and insists that it would be a hardship to the defendant to deprive it of the economical and beneficial use of its property if it should be compelled to construct and maintain a derailing switch or device at the points of crossing, or to contribute to the expense of the construction or maintenance thereof.

It denies that it has been requested by the complainant company to adopt a method of crossing which would prevent collisions. It denies that the provisions of the city ordinance, authorizing the defendant to cross Pearl street, are in any way inadequate, either for the protection of the public using the complainant's cars or the public using the highway at Pearl street at the points where the defendant's railroad tracks cross that street.

The defendant alleges that it is an incorporated company under the laws of the State of New Jersey since the year 1899, engaged in the business of manufacturing cast-iron products, and has a plant on Pearl street, in the city of Burlington, consisting of two hundred and fifty acres or more of land extending on both sides of that street for more than a mile; that

it is the owner in fee of all that portion of Pearl street on which are the sites of the proposed crossings; that they are distant at least eighteen hundred feet from the property of any other person, and that the only buildings on that portion of Pearl street are those connected with the defendant company's plant.

The defendant further alleges that more than ten years ago the McNeal Company (a precedent owner of the defendant company's plant) constructed a railway crossing at Pearl street (at the point marked *A* on diagram), and that the defendant company has continuously ever since used that crossing in the conduct of its business; that its cars, in passing across Pearl street, are always drawn by a locomotive engine and at a speed never exceeding five miles an hour; that in operating the crossing a member of the switching crew, or one of the defendant's employes crosses the highway ahead of the cars for the purpose of making certain that the highway is unobstructed and that the cars may be sent across it with entire safety; that the average number of the defendant company's cars crossing on the single track (at the point marked *A* on diagram) has been about eight a day, and as both going and coming cars have to pass on the single track, the company's business is seriously delayed and incommoded; that this inconvenience can only be overcome by the construction and use of additional crossings; that for the sole purpose of accommodating the cars leaving its plant, it has arranged for the construction of the two additional sidings, one at a point twelve hundred feet eastwardly from Thompson street, at an angle of seventy degrees, and the other at a point fifteen feet eastwardly of the east side of Thompson street, at an angle of ninety degrees; that, by the construction of said new crossings, the number of cars to be hauled across the highway will be decreased, obstruction to travel on the highway will be lessened and the necessity of sending cars across the crossing after dark will be entirely obviated. The defendant further states that it does not expect to construct the third of the sidings described in said ordinance at the present time, and that the city's consent to the laying of that siding was obtained solely with a view of construction at some distant date.

The defendant further contends that the view along Pearl street is so uninterrupted that the cars about to cross may be so readily seen that the occurrence of a collision is extremely improbable; that it is not intended to have the cars cross at a speed exceeding five miles an hour, and always under control and preceded by a member of the train's crew or one of the defendant's employes on foot. The defendant insists that, under the circumstances narrated in its answer, it is entirely unnecessary that any derailing device should be installed or maintained at the crossings in question.

Issue was joined and the cause came to hearing on these pleadings.

*Mr. Linton Satterthwait,* for the complainant.

*Mr. Howard Flanders,* for the city of Burlington.

*Mr. John G. Horner* and *Mr. Frederick J. Faulks,* for the United States Cast Iron Pipe and Foundry Company.

GREY, V. C.

The complainant is a trolley company, which owns and operates an electric railway for the carriage of passengers from Camden to Trenton.

A portion of its route runs on a single track, longitudinally, through Pearl street, in the city of Burlington. The defendant, the United States Cast Iron Pipe and Foundry Company, owns both sides and the bed of that street, and maintains a large pipe-making plant there, and has for some years connected the business carried on upon one side of that street with that done on the other by a steam railroad, which also connects with the tracks operated by the Pennsylvania Railroad Company running through Broad street, in Burlington.

The defendant company has obtained leave from the city of Burlington to build three additional tracks across Pearl street, for the conduct of its business, to be used solely for the passage of freight cars moved by steam engines. Two of these crossings, at the points marked *B* and *C* on the diagram, it proposes to

build at once, and the other, crossing Pearl street at a point located three hundred feet east from the east side of Hulme street, the defendant company does not intend to build at this time.

In the ordinance of the city of Burlington authorizing the defendant's crossings there are provisions that the speed of the defendant's freight cars moving across Pearl street shall not exceed five miles an hour, and that its flagman shall give notice of its approaching trains.

The complainant does not challenge the defendant's proposed crossings because of their location or construction. What it objects to is the use which the defendant company proposes to make of these crossings by passing its freight cars over them. This proposed use at the points B and C, the complainant insists, will be an intrusion by the defendant upon the complainant's right to run its railway tracks in Pearl street at any speed which it may choose. The complainant further contends that the provisions of the city ordinance that the defendant company shall limit the speed of its freight cars in crossing the complainant's tracks to five miles an hour, and give notice by flagmen, &c., is insufficient as a protection against the possibility of collisions between the complainant's railway cars, moving at the speed at which they are entitled to travel, and the defendant's freight cars crossing the electric railway tracks. The complainant therefore insists that the right asserted by the defendant company to cross the electric railway tracks at grade, in the mode proposed, conflicts with the complainant company's right to drive its cars along Pearl street at unlimited speed, and entitles the complainant to the intervention of this court to compel the defendant company to put in some sufficient derailing device at the proposed crossings, to protect against this alleged danger.

The proofs show that the complainant company runs over fifty cars a day along Pearl street, and that it intends to increase probably to double that number. That the defendant company now uses its present one-track crossing, at the point A, eight to twelve times a day for the passage of cars drawn by a locomotive, and less frequently for the passage of hand cars pushed by the

men.   When the proposed new sidings are put in, most of the drilling of cars will be done inside the defendant company's gates, without crossing the street, which will decrease the number of movements across the complainant company's tracks very materially, so that at the outside they will not probably exceed four or five in the course of a day.   Other changes in the defendant company's work, attendant upon the construction of the new crossings, will also tend to lessen the number of movements across the complainant's railway tracks on Pearl street and to clear the view of the points of proposed intersection.

The evidence shows that there is very little public highway travel along that part of Pearl street in which these proposed crossings by the defendant company will be located.   So little, indeed, that the passage of ordinary vehicles across the points *B* and *C,* where the defendant company's proposed crossings will intersect the complainant company's railway, does not enter into consideration in ascertaining whether special protective devices should be there used.

The trend of the railway company's complaint is that the construction of the defendant's two crossings at the points *B* and *C,* unless some derailing device be there adopted, will compel the railway company, for safety's sake, to check the speed of its cars in order to prevent collisions with the defendant company's freight cars crossing its tracks.

The complainant's argument is that under the law it is entitled to drive its cars along Pearl street, in the city of Burlington, at unlimited speed;   that the intersections of its railway by the crossing tracks of any other railroad at grade must, *per se,* constitute a danger and be an interference with its chartered rights; that these circumstances entitle it to the intervention of this court to compel the defendant company to put in some protective device at the proposed crossings which will minimize the danger from collision of moving cars at those points.

The proofs in this case show that the proposed crossings *B* and *C* are so located that the employes of either company can readily see the movements of the cars of the other as the proposed crossings are approached.

19

The crossing at the point *A* on the diagram has been used by the defendant company for years before the complainant built its electric railway. The complainant company makes no proposition to arrange for the installment of any protective device for that crossing. It may therefore be assumed that it expects to avoid possible dangers at the present crossing *A,* by instructions to its own employes to drive their cars at a slower rate of speed when approaching that point.

The crossing *B,* where the complainant insists a protective device should be installed, is distant only three hundred feet from the present crossing at the point *A.* The two crossings *A* and *B* lie so near each other, and are in their surrounding conditions so nearly identical, that any checking of speed by the complainant's motormen at the crossing *A* may easily be continued until the crossing *B* is passed.

It may be true, as stated by the complainant's counsel, that no limitation of the speed at which its electric cars may travel in the streets of a city, is imposed by the statute under which the complainant company is incorporated, or by the ordinances of the city of Burlington, but, in my view, that does not justify the continuous running of electric cars in public highways at a rate of speed which endangers every other use of such thoroughfares.

All the cases which have dealt with the *status* of street horse railroads and their successors, the electric railways, using public highways longitudinally, have been based on the theory that these uses of the highway are within those for which the land was originally taken by the public for a highway (*Hinchman* v. *Paterson Railroad Co., 17 N. J. Eq. (2 C. E. Gr.) 75;. Halsey* v. *Rapid Transit Co., 47 N. J. Eq. (2 Dick.) 380*) ; that the movement of street railway cars on their tracks in the highway, "is only a modification of the public use to which the highway was originally devoted." *Citizens' Coach Co.* v. *Camden Horse Railroad Co., 33 N. J. Eq. (6 Stew.) 267.* In that case it was expressly held, by the court of errors and appeals, that the legislative grant to a street railway company of the right to lay rails in a public street at the level of the highway, carried with it, in the nature of a condition imposed on the company, a permission

to other vehicles to use the railway tracks as a place of passage
to and fro, but not for the purpose of competing with the street
railway company in carrying passengers for hire.

The effect of these and similar decisions is to declare that the
movement of street railway cars along the public highways is a
use which the street railway companies enjoy in common with
other vehicles traveling on these highways. Everyone enjoying
such a common easement is bound so to regulate his own use of
the common right that he does not unreasonably interfere with
other persons in their enjoyment of it.

Express statutory limitation of the speed at which street rail-
way cars may be driven along the public highways is therefore
not necessary in order to cast upon street railway companies the
obligation so to restrain the speed of their cars that other
vehicles may reasonably enjoy the use of the public way.

The rules regulating the speed at which steam railroad com-
panies may drive their trains have no application to street rail-
ways. Each steam railway has the sole and exclusive enjoyment
of its way, and its crossings of public ways are controlled by
express legislative enactments. *Pennsylvania Railroad Co.* v.
*Matthews, 36 N. J. Law (7 Vr.) 531; New York, &c., Railroad
Co.* v. *Leaman, 54 N. J. Law (25 Vr.) 202 (Court of Errors
and Appeals).*

It cannot, in my view, be maintained that every other user
of the public highways must provide the electric railways with
a clear passage to run their cars therein at unlimited speed.
Where an electric railway company using a public street can
by a reasonable slowing of the speed of its cars remove the prob-
ability of collision, it has no equity to require other users of the
way to provide expensive and special devices to insure it the
opportunity to drive its cars in the public streets at unlimited
speed.

Each of these cases of claimed conflicting easements of way
at grade at the same place must, of course, be decided upon the
conditions existing at the *locus in quo* the dispute arises.

In the present case nothing appears which indicates that it is
an unreasonable interference with the complainant's right, to
deal with these two crossings at the points *A* and *B* as subject

to the same dangers, and capable of being protected by the same precautions, which it is entirely within the complainant's power to provide, namely, a checking of the speed of its cars as they approach those crossings. As the remedy for the apprehended danger plainly lies within the complainant's own control, there is no occasion for the intervention of this court respecting the crossing *B.*

The same principles apply to the objections made by the complainant to the proposed crossing at the point *C,* although the conditions there are somewhat variant.

Both these proposed crossings by the defendant company of the complainant company's tracks lie within the limits of the public street of the city of Burlington which the complainant company is using longitudinally for its railway.

The crossing at the point marked *C* on the diagram, is about twelve hundred feet eastwardly from the crossing at the point marked *B.* All the disputed crossings lie within a distance of a little more than a quarter of a mile.

A proper checking by the complainant company of the speed of its cars while they are passing over this quarter of a mile will afford all the protection needed to prevent collisions at the proposed crossings.

All the defendant company's movements of its freight cars over both the proposed crossings, will be at points previously known to the complainant's employes. The defendant's crossing cars may be readily seen by the complainant's motormen as they approach the intersecting points.

The proof is that the present single crossing at the point marked *A,* is now used by the defendant company about twelve times per day, a little more than once every working hour. The uncontradicted evidence also shows that by the improved and additional facilities for the arrangement and conduct of the defendant company's business, which will be afforded by the proposed crossings at the points *B* and *C,* the number of movements of the defendant's cars across the complainant company's tracks will be reduced to four or five in the course of a day— an average of about one cross movement every two hours of a working day.

The circumstances show conditions which indicate that the construction and use of the new crossings *B* and *C,* instead of increasing the dangers to the complainant's cars in passage along Pearl street, will actually lessen the present interference with their travel in that highway.

In order to justify the interposition of this court the complainant must show that the proposed acts of the defendant company will in their final result impose upon the complainant company an additional and unreasonable burden of care at the crossing points. The evidence goes to show the contrary of this proposition.

A decree will be advised that the complainant's bill be dismissed, with costs.